UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COYNE INTERNATIONAL ENTERPRISES CORP.
d/b/a COYNE TEXTILE SERVICES,

                          Plaintiff,

                  -vs-

MYLAN PHARMACEUTICALS, INC.,

                          Defendant.
_____

**COMPLAINT**

Civil Action No.: 5:13-CV-821 (MAD/TWD)

TRIAL BY JURY DEMANDED ON ALL ISSUES

      Plaintiff Coyne International Enterprises Corp. d/b/a Coyne Textile Services (hereinafter "Plaintiff"), by its attorneys, The Wolford Law Firm LLP, for its Complaint against defendant Mylan Pharmaceuticals, Inc. (hereinafter "Defendant"), hereby alleges upon information and belief the following:

<u>THE PARTIES</u>

      1.    Plaintiff is a New York corporation with its principal place of business located at 140 Cortland Avenue in Syracuse, New York 13221.

      2.    Plaintiff is a privately owned uniform rental company, which rents, leases, sells and launders textile products.

      3.    Defendant is a West Virginian corporation with its principal place of business located at 781 Chestnut Ridge Road, Morgantown, West Virginia 26505.

      4.    Defendant is in the business of researching, developing, manufacturing, marketing and distributing generic pharmaceutical products.

## JURISDICTION AND VENUE

5. Jurisdiction is proper pursuant to 28 U.S.C. §1332(a) because the amount in controversy exceeds seventy five thousand dollars ($75,000), and the parties are citizens of different states with Defendant being a citizen of West Virginia and Plaintiff being a citizen of New York.

6. Personal jurisdiction and venue are predicated on 28 U.S.C. §1391(b) and New York Civil Practice Law and Rules §302 since a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of New York, or a substantial part of property that is the subject of the action is situated in the Northern District of New York and because Defendant transacts business within the State of New York.

7. In addition, the parties contractually agreed that any action shall be brought in the appropriate court of competent jurisdiction in Onondaga County, New York, and the parties contractually agreed and consented to the exercise of jurisdiction by this Court.

## THE CONTRACT AND ITS TERMINATION

8. In or around September 2004, Plaintiff and Defendant entered into a written Service Agreement (hereinafter referred to as "the Original Agreement") pursuant to which Plaintiff was to provide various items to Defendant. A copy of the Original Agreement is attached hereto as **Exhibit 1**.

9. Pursuant to Paragraph 3 of the terms and conditions of the Original Agreement:

> Terms shall be net ten (10) days after statement date. A late payment charge of one and one-half percent (1½%) per month shall be applied to all past due amounts . . . [f]ailure to timely pay any charges due Coyne shall constitute a material breach of this Agreement.

10. Thereafter, several addendums were added to the Original Agreement in August 2006, January 2007, February 2007 and December 2007. Copies of the addendums are attached hereto as **Exhibit 2**.

11. Of particular relevance to the present matter is the January 2007 Service Agreement Addendum – New Item Order Form (hereinafter "January 2007 Addendum") in which Defendant requested "new post blue pocketless pants and new snap front pocketless shirts" (hereinafter referred to "Pocketless Pants" and "Snap Shirts"), to replace the existing shirts and pants originally requested by Defendant and which represented a change in style from the pants and shirts in place under the Original Agreement.

12. The Original Agreement with its addendums was thereafter amended on October 21, 2011 (hereinafter "First Amendment"), December 7, 2011 (hereinafter "Second Amendment"), April 11, 2012 (hereinafter "Third Amendment") and May 2012 (hereinafter "Fourth Amendment"). Copies of the four amendments to the Original Agreement are attached hereto as **Exhibit 3**.

13. The Third Amendment amended Paragraph 3 of the Original Agreement to state as follows:

> The payment terms shall be net thirty (30) days after Mylan's receipt of invoice. If paid within thirty (30) days of receipt of invoice, Mylan shall take a one percent (1%) discount on total invoice amount.

14. The Third Amendment further provided that "all other terms and conditions of the Agreement are in full force and effect."

15. In or around November 2012, Defendant issued a solicitation of bids for the provision of the services Plaintiff had been and still was providing.

16. Plaintiff submitted a bid for the work in or around December 2012.

17. Although Defendant never announced the successful bidder, in or around April 2013, Plaintiff was provided with a Mylan flyer entitled "Frequently Asked Uniform Questions" (hereinafter "Mylan Flyer") from a third party, which stated that Defendant had chosen to hire another company to provide the services Plaintiff had been providing for over twenty years, and set forth specific dates and time frames for the transition from Plaintiff to such company. However, Defendant never bothered to inform Plaintiff of this decision. A copy of the Mylan Flyer is attached hereto as **Exhibit 4**.

18. When Plaintiff confronted Defendant through Clarence Patrick (hereinafter "Patrick"), Regional Category Manager North America Indirect Strategic Sourcing and Ed Fox, Vice President – North America Indirect Strategic Sourcing (hereinafter "Fox"), about this issue, both Patrick and Fox denied that any change in service providers had occurred and indicated that Defendant was still reviewing Plaintiff's bid. Incredibly, however, both Patrick and Fox were silent regarding the Mylan Flyer and when pressed,

refused to answer Plaintiff's direct questions as to why the Mylan Flyer appeared to be confirming an imminent transition in service providers.

19. In response to Defendant's deceptive and misleading behavior, Plaintiff elected to terminate the parties' contract in accordance with the Fourth Amendment, which required Plaintiff to provide at least thirty (30) days' written notice of its intent to terminate the contract. Accordingly, on or about April 19, 2013, Plaintiff provided written notice to Defendant that its last day of service would be May 19, 2013. A copy of the notice of termination is attached hereto as **Exhibit 5**.

## BUYOUT ITEMS

20. Pursuant to Paragraph 5(d) of the terms and conditions of the Original Agreement:

> If Customer requests "Specialty Items" (including but not limited to embroidered items, art work, logo mats and any non-core CTS catalogue items) at the inception of service or during the term of this agreement and/or if Customer requests changes in color and/or style of garments and/or goods after initial installation, Customer will be required to purchase all such items in issue and/or inventory at the current replacement value, upon implementation of any changes, termination of any wearers, or termination of this Agreement for any reason.

(hereinafter referred to as the "Buyout Provision"). The substance of this provision has remained the same throughout the course of the parties' dealings.

21. Pursuant to the January 2007 Addendum, Defendant requested the Pocketless Pants and Snaps Shirts, which were changes in style from the pants and shirts originally ordered by Defendant in 2004. Because of this change the Pocketless Pants and Snap Shirts are considered buyout items under provision 5(d) of the terms

and conditions of the contract and Defendant is required to purchase them under that Buyout Provision.

22.     In addition, during the term of the parties' contract Defendant requested and was provided with special logo mats (hereinafter "Logo Mats") in various sizes. Because the Logo Mats incorporate Defendant's logo, they also fall under the Buyout Provision and Defendant is obligated to purchase these mats.

23.     Pursuant to the terms of the contract, on or about May 1, 2013, Plaintiff provided Defendant an invoice (hereinafter "May 1 Invoice") in the amount of $61,750.11, representing the Pocketless Pants held in Plaintiff's stockroom inventory, which had been provided to Defendant in the normal course of business. A copy of the May 1 Invoice and the accompanying packing list are attached hereto as **Exhibit 6**.

24.     Plaintiff delivered and Defendant accepted all of the items covered by the May 1 Invoice provided to Defendant in the normal course of business.

25.     Defendant never rejected or revoked its acceptance of the items covered by the May 1 Invoice provided to Defendant.

26.     Pursuant to the terms of the contract, on or about May 22, 2013, Plaintiff provided Defendant with Invoice No: Revised 56579-2 (hereinafter "May 22 Invoice"), in the amount of $564,868.86, listing the buyout items Defendant is required to purchase pursuant to the Buyout Provision, including the Pocketless Pants that were in service, Snap Shirts and Logo Mats. A copy of the May 22 Invoice and the accompanying packing list are attached hereto as **Exhibit 7**.

27.	On or about May 20, 2013, Plaintiff attempted delivery of all of the buyout items covered by the May 22 Invoice, but Defendant wrongfully refused to accept the items.

28.	To date, Defendant has not paid any of the amounts due for the buyout items, and the total amount due of six hundred twenty six thousand six hundred eighteen dollars and ninety seven cents ($626,618.97) remains unpaid and has been outstanding for greater than thirty (30) days.

29.	Pursuant to the contract terms, a one and one half percent (1½%) per month late payment charge should be applied to the amounts owed for these past due invoices.

### SERVICES PROVIDED TO DEFENDANT PRIOR TO CONTRACT TERMINATION

30.	Pursuant to the terms of the contract, on or about May 16, 2013, Plaintiff provided Defendant with Invoice MYLAN-5-16-2013 (hereinafter "May 16 Invoice"), in the amount of $26,690.63, representing services provided to Defendant in the normal course of business for the period of May 1, 2013 through May 17, 2013.  A copy of the May 16 Invoice is attached hereto as **Exhibit 8**.

31.	Plaintiff delivered and Defendant accepted all of the services and items covered by the May 16 Invoice provided to Defendant in the normal course of business.

32.	Defendant never rejected or revoked its acceptance of the services or items covered by the May 16 Invoice provided to Defendant.

33.	The May 16 Invoice in the amount of $26,690.63 remains unpaid and has been outstanding for greater than thirty (30) days.

34.     Pursuant to the contract terms, a one and one half percent (1½%) per month late payment charge should be applied to the amounts owed for this past due invoice.

## NON-BUYOUT ITEMS IN DEFENDANT'S POSSESSION

35.     On two separate occasions Plaintiff requested the return of non-buyout items including various garments, service equipment and flat goods (hereinafter "Non-buyout Items") in Defendant's possession.  Defendant has failed to return those items, despite assurance from Patrick on two separate occasions that such arrangements would be made.

Replacement costs of Non-buyout Items for failure to return those items.

36.     Pursuant to Paragraph 5(c) of the terms and conditions of the Original Agreement:

> Customer recognizes and acknowledges Coyne's substantial investment in measuring, furnishing and servicing uniforms and other rental items in order to provide services to Customer and to meet Customer's particular needs and requirements.  In consideration and acknowledgement thereof, Customer agrees to pay a "Loss and Abuse" charge at the then current replacement values for garments and/or goods in the event of the following: i) the garments and/or goods are lost, stolen, or destroyed by fire, acid, paint, gross neglect, or otherwise, to the extent that such garments and/or goods are unusable as determined by Coyne and/or ii) the garments and/or goods are not returned upon termination of service.

The substance of this provision has remained the same throughout the course of the parties' dealings.

37. The Non-buyout Items in Defendant's possession include:

    a. various garments with a replacement value of $331,031.22;

    b. service equipment, including uniform cages, uniform bins, uniform soil lockers and uniform rails with a collective replacement value of $10,325.00; and

    c. flat goods, including but not limited to various mats and mops, with a collective replacement value of $8,402.46.

38. In sum, Defendant has failed to return these Non-buyout Items, and has also failed to remit payment of $349,758.68 representing the total replacement cost of all Non-buyout Items still in Defendant's possession.

Rental charges for retained Non-buyout Items.

39. On or about May 31, 2013, Plaintiff provided Defendant with Invoice No. MYLAN-5-31-2013 (hereinafter "May 31 Invoice") in the amount of $9,641.96, representing the weekly rental charges for the period of May 18, 2013 through May 31, 2013, for the Non-buyout Items Defendant has refused to return. A copy of the May 31, 2013 Invoice is attached hereto as **Exhibit 9**.

40. Defendant is still in possession of the Non-buyout Items and will continue to incur weekly rental charges of $4,820.98 through the present and thereafter.

41. Plaintiff delivered and Defendant accepted and continues to retain Non-buyout Items covered by the May 31 Invoice provided to Defendant in the normal course of business.

42. Defendant never rejected or revoked its acceptance of the Non-buyout Items covered by the May 31 Invoice provided to Defendant.

43. The May 31 Invoice in the amount of $9,641.96 remains unpaid and has been outstanding for greater than thirty (30) days.

44. Pursuant to the contract terms, a one and one half percent (1½%) per month late payment charge should be applied to the amounts owed for the past due invoices not paid within thirty (30) days of the statement date.

## AS AND FOR A FIRST CAUSE OF ACTION
### [Breach of Contract]

45. Plaintiff repeats and realleges paragraphs 1 through 44 as though fully set forth herein.

46. Pursuant to Paragraph 3 of the terms and conditions, Defendant is obligated to remit payment for the amounts invoiced to Defendant within thirty (30) days after the statement date.

47. Pursuant to the terms of the contract, Defendant is obligated to remit payment for the following invoices: May 1, 2013, May 16 Invoice, May 22 Invoice and the May 31 Invoice, plus a one and one half percent (1½%) per month late payment charge for all invoices not paid within thirty (30) days of the statement date.

48. Defendant has failed to pay the amounts due, despite due demand having been repeatedly made by Plaintiff.

49. As a result, Defendant has breach its contractual obligations to Plaintiff, and Plaintiff has been damaged as a result of the contractual breaches in the amount of at least one million twelve thousand seven hundred ten dollars and twenty four cents ($1,012,710.24), plus continuing weekly rental charges, interest and the applicable one and one half percent (1½%) per month late payment charge.

### AS AND FOR A SECOND CAUSE OF ACTION
### [Breach of Contract]

50. Plaintiff repeats and realleges paragraphs 1 through 49 as though fully set forth herein.

51. By executing the Original Agreement and all of the addendums and amendments thereto, Defendant agreed to all the terms and conditions contained therein, including the Buyout Provision.

52. Under the Buyout Provision, Defendant promised to pay for those items which represented a change in style from those originally requested or which incorporate a logo, which would include the Pocketless Pants and Snap Shirts specifically requested by Plaintiff in 2007, and the Logo Mats.

53. Defendant has failed to pay the amounts due, despite due demand having been repeatedly made by Plaintiff.

54. As a result, Defendant has breach its contractual obligations to Plaintiff, and Plaintiff has been damaged as a result of the contractual breaches in the amount of at least one million twelve thousand seven hundred ten dollars and twenty four cents ($1,012,710.24), plus continuing weekly rental charges, interest and the applicable one and one half percent (1½%) per month late payment charge.

### AS AND FOR A THIRD CAUSE OF ACTION
### [Breach of Contract]

55. Plaintiff repeats and realleges paragraphs 1 through 54 as though fully set forth herein.

56. By executing the Original Agreement and all of the addendums and amendments thereto, Defendant agreed to all the terms and conditions contained

therein, including Paragraph 5(c) requiring the return of garments and/or goods upon termination of service.

57. Under that provision, Defendant was required to return all Non-buyout Items in its possession or, in the alternative, reimburse Plaintiff for the replacement cost of those items upon termination of the parties' contract.

58. Defendant has taken full possession and ownership of the Non-buyout Items, has failed to return those items and has failed to remit payment for the replacement cost of those items.

59. As a result, Defendant has breached its contractual obligations to Plaintiff, and Plaintiff has been damaged as a result of the contractual breaches in the amount of at least one million twelve thousand seven hundred ten dollars and twenty four cents ($1,012,710.24), plus continuing weekly rental charges, interest and the applicable one and one half percent (1½%) per month late payment charge.

## AS AND FOR A FOURTH CAUSE OF ACTION
### [Conversion]

60. Plaintiff repeats and realleges paragraphs 1 through 59 as though fully set forth herein.

61. Defendant has wrongfully obtained possession and converted to its own use Plaintiff's items and garments, without paying for said property.

62. By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, in the amount of at least one million twelve thousand seven hundred ten dollars and twenty four cents ($1,012,710.24).

## AS AND FOR A FIFTH CAUSE OF ACTION
### [Unjust Enrichment]

63.     Plaintiff repeats and realleges paragraphs 1 through 62 as though fully set forth herein.

64.     Defendant has taken and continues to hold and use Plaintiff's items and garments, without paying for said property.

65.     Defendant has been unjustly enriched at Plaintiff's expense by such retention.

66.     By reason of the foregoing, Plaintiff has been damaged in an amount to be determined at trial, in the amount of at least one million twelve thousand seven hundred ten dollars and twenty four cents ($1,012,710.24).

## AS AND FOR A SIXTH CAUSE OF ACTION
### [Damages for Price Under the Uniform Commercial Code]

67.     Plaintiff repeats and realleges paragraphs 1 through 66 as though fully set forth herein.

68.     As a contract for the sale of goods as defined in Article 2 of the New York Uniform Commercial Code (hereinafter "U.C.C."), the Original Agreement and all of the amendments thereto are governed by the provisions of the New York U.C.C., *codified* at N.Y. U.C.C. §§1-100 *et seq*.

69.     Pursuant to U.C.C. §2-606 and §2-607, Plaintiff may recover the price of the goods that were accepted by Defendant together with incidental damages under U.C.C. §2-710.

70.     As a result of Defendant's acceptance of goods and failure to pay the prices for them as they became due, Plaintiff has incurred damages in the amount of at

least one million twelve thousand seven hundred ten dollars and twenty four cents ($1,012,710.24) plus a penalty on said amount of one and one half percent (1½%), plus interest and incidental damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
[Damages for Defendant's Non-Acceptance of Conforming Goods Under the Uniform Commercial Code]

71.   Plaintiff repeats and realleges paragraphs 1 through 70 as though fully set forth herein.

72.   As a contract for the sale of goods as defined in Article 2 of the New York Uniform Commercial Code (hereinafter "U.C.C."), the Original Agreement and all of the amendments thereto are governed by the provisions of the New York U.C.C., *codified* at N.Y. U.C.C. §§1-100 *et seq.*

73.   Pursuant to U.C.C. §2-703 and §2-709, Plaintiff may recover the price of the conforming goods that were rejected by Defendant.

74.   The conforming goods rejected by Defendant are buyout items as defined under the parties' contract and for which resale is impracticable.

75.   As a result of Defendant's non-acceptance of the conforming goods, Plaintiff has incurred damages in the amount of at least one million twelve thousand seven hundred ten dollars and twenty four cents ($1,012,710.24) plus a penalty on said amount of one and one half percent (1½%), plus interest and incidental damages.

76.   In the alternative, pursuant to U.C.C. §2-703 and §2-708, Plaintiff may recover the difference between the market price at the time and place of tender and the unpaid contract price of the wrongfully rejected conforming goods, plus interest and

incidental damages, as a result of Defendant's non-acceptance of the conforming goods.

**WHEREFORE**, Plaintiff Coyne International Enterprises Corp. d/b/a Coyne Textile Services demands judgment against Defendant Mylan Pharmaceuticals, Inc., on each and every cause of action awarding compensatory damages in an amount to be proven at trial in the amount of at least one million twelve thousand seven hundred ten dollars and twenty four cents ($1,012,710.24), plus continuing weekly rental charges, interest and incidental damages, and granting such other and further relief as the Court deems just and proper, together with the costs and disbursements of this action, including reasonable attorneys' fees.

DATED:  July 11, 2013

s/ Michael R. Wolford
Michael R. Wolford, Esq.
Bar Number:  502001
Victoria S. Gleason, Esq.
Bar Number:  516610
**THE WOLFORD LAW FIRM LLP**
*Attorneys for Plaintiff*
  *Coyne International Enterprises Corp.*
  *d/b/a Coyne Textile Services*
600 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614
Telephone: (585) 325-8000
mwolford@wolfordfirm.com
vgleason@wolfordfirm.com

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff Coyne International Enterprises Corp. d/b/a Coyne Textile Services hereby requests a trial by jury on all issues triable to a jury.

s/ Michael R. Wolford
Michael R. Wolford, Esq.
Bar Number:  502001
Victoria S. Gleason, Esq.
Bar Number:  516610
**THE WOLFORD LAW FIRM LLP**
*Attorneys for Plaintiff*
  *Coyne International Enterprises Corp.*
  *d/b/a Coyne Textile Services*
600 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614
Telephone: (585) 325-8000
mwolford@wolfordfirm.com
vgleason@wolfordfirm.com